IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KARIN B. NOVICK                                                                    PLAINTIFF

v.                        CIVIL NO. 16-5308

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                                                     DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Karin B. Novick, appearing *pro se,* brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

### I.    Procedural Background:

Plaintiff protectively filed her current application for DIB on December 26, 2012, alleging an inability to work since December 21, 2007, due to celiac/gluten sensitivity, a ruptured and bulging disc in the neck, dry eyes, headaches, asthma, vocal cord dysfunction, allergies, anaphylaxis, hand eczema, malaise and chronic fatigue. (Tr. 89, 194). For DIB purposes, Plaintiff maintained insured status through December 31, 2013. (Tr. 24, 57, 201). An

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

administrative video hearing was held on July 29, 2015, at which Plaintiff appeared with counsel and testified. (Tr. 47-87).

By written decision dated August 7, 2015, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 26). Specifically, the ALJ found that through her date last insured Plaintiff had the following severe impairments: essential hypertension, degenerative disc disease of the cervical spine, and neurodermatitis. However, after reviewing all of the evidence presented, the ALJ determined that through the date last insured, Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 27). The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §404.1567(b). (Tr. 27). With the help of a vocational expert, the ALJ determined that through her date last insured, Plaintiff could perform her past relevant work as a title researcher and an attorney. (Tr. 30-31).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 23, 2016. (Tr. 4-9). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is now before the undersigned for report and recommendation. (Docs. 10, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II. Evidence Presented:

At the administrative hearing held on July 29, 2015, Plaintiff testified that she was forty-eight years of age and had earned a law degree. (Tr. 53, 80-81). Plaintiff's past work consists of work as a title searcher and an attorney. (Tr. 83).

The pertinent medical evidence during the relevant time period reflects the following. On March 6, 2008, Plaintiff established care with Dr. Tina Hatley of The Allergy and Asthma Clinic of Northwest Arkansas. (Tr. 431, 433-450). Treatment notes indicated Plaintiff would undergo lab work.

On March 6, 2008, Plaintiff also underwent a pulmonary function test. (Tr. 451). Plaintiff was found to have normal spirometric values.

On April 6, 2008, Plaintiff was seen by Dr. Tina Merritt of The Allergy and Asthma Clinic of Northwest Arkansas. (Tr. 432). Dr. Merritt noted Plaintiff had a history of wheat and dairy intolerance. Plaintiff reported she had been avoiding both wheat and dairy since 2006, but was still experiencing gastrointestinal symptoms. Plaintiff also reported a history of Reynaud's and eczema, as well as pain in her hands.

On April 21, 2008, Plaintiff was seen by Dr. Timothy W. Yawn for a follow-up for her hypertension. (Tr. 465-470, 479-480, 547-549). Plaintiff reported she started taking the Dyazide two weeks ago even though it was prescribed in October. Plaintiff denied headaches but reported experiencing dizziness. Upon examination, Dr. Yawn noted no abnormality of the eyes. Plaintiff had good peripheral pulses and a skin examination was normal. Plaintiff was assessed with hypertension, asthma and abdominal bloating with a positive gluten sensitivity. Dr. Yawn noted he would refer Plaintiff for a gastroenterology consult.

On August 25, 2008, Plaintiff complained of an aggravation of eczema on her hands. (Tr. 482-487). Plaintiff was assessed with eczema with the areas of apparent neurodermatitis. Plaintiff was advised not to scratch the areas and to use ointment and Zyrtec. There was discussion that Plaintiff might undergo specialty testing.

On January 5, 2009, Plaintiff complained of a rash on her upper extremity and hand. (Tr. 502-503). Plaintiff was noted to have a long history of what Plaintiff believed to be atopic dermatitis limited to her hands and forearms. Plaintiff thought the lesions were related to a variety of allergies. Plaintiff presented with approximately fifteen pages of hand-written notes of her medical history. Upon examination, Plaintiff's mood and affect were within normal limits without unusual depression, anxiety or agitation. The examiner opined that Plaintiff's history was most suggestive of dyshidrosis. The examiner did not think Plaintiff's symptoms were consistent with atopy, systemic allergy or contact dermatitis, including airborne. Plaintiff did not agree with the examiner. It was recommended that Plaintiff follow-up with her regular dermatologist in Arkansas.

On May 27, 2010, Plaintiff was seen by Dr. Mark F. Olsen. (Tr. 508-509, 550). Plaintiff reported that she had food allergies and had been feeling fatigued. Plaintiff also requested medication refills. After examining Plaintiff, Dr. Olsen diagnosed her with chronic abdominal pain/gas/bloating. Dr. Olsen recommended treating Plaintiff for intestinal yeast for one to two months.

On September 24, 2010, Plaintiff called Dr. Olsen's office and reported she felt better when she was taking diflucan daily, and wanted to know if she could continue to take it daily.

(Tr. 510). Plaintiff also reported that the only thing that gave her consistent energy was refined sugar or Imodium.

On April 3, 2013, Plaintiff complained of a swollen white part of the eye in her left eye. (Tr. 513-515). Plaintiff was unsure if she should be wearing contact lenses. Dr. Eric Jerde diagnosed Plaintiff with moderate MGD; a conjunctival cyst, mild; myopia; and mild lid ptosis.

In a letter dated April 10, 2013, Dr. Jerde stated he was sending Plaintiff to Dr. Sines office for a lid ptosis evaluation. (Tr. 511-512, 516). Dr. Jerde noted Plaintiff attributed her symptoms to her celiac disease and was somewhat convinced she may have ocular myasthenia. Dr. Jerde opined that Plaintiff's lid ptosis was merely due to swelling and constant inflammation of the ocular surface.

The medical records dated after the expiration of Plaintiff's insured status reflect the following. On April 10, 2014, Plaintiff underwent a general physical examination performed by Dr. Robert Karas. (Tr. 539-544). Plaintiff reported that she had celiac sensitivity diagnosed in 2006, inflammatory bowel disorder, and chronic diarrhea. Plaintiff reported she was on a gluten free diet. Plaintiff also complained of chronic pain due to a bulging disc in her neck. Upon examination of Plaintiff's spine and extremities, Dr. Karas noted Plaintiff had normal range of motion. Dr. Karas found no presence of muscle spasm and negative straight leg tests, bilaterally. Plaintiff exhibited no muscle atrophy or weakness. Dr. Karas noted periodic numbness into Plaintiff's feet, ankles and hands. Upon a limb function evaluation, Dr. Karas reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk

5

on heal and toes; and to squat/arise from a squatting position. Dr. Karas opined Plaintiff had mild limitations with walking, carrying and lifting.

**III.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

6

A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

**IV. Discussion:**

Plaintiff argues that the ALJ's determination is not supported by substantial evidence of record. Defendant argues that the record supports the ALJ's determination.

**A. Insured Status and Relevant Time Period:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2013. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of December 21, 2007, her alleged onset date of disability, through December 31, 2013, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

### B. Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir.2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011). After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### C. Plaintiff's Impairments:

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing she suffers from a medically severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments during the time periods in question, the ALJ stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). After reviewing the record as a whole, the Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

**D. Evaluation of the Listed Impairments:**

Plaintiff appears to argue the ALJ erred by failing to determine that Plaintiff's impairment medically equals Listing 8.05 Dermatitis and/or Listing 1.04 Disorder of the Spine.

The burden of proof is on the Plaintiff to establish that her impairment meets or equals a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant ... must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment"). In this case, the ALJ found the medical evidence does not show medical findings that are the same or equivalent to a listed impairment.

The Court finds, based upon the record as a whole Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. Accordingly, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff's impairments do not medically equal a Listing.

**E. Combination of Impairments:**

Plaintiff argues that the ALJ erred in failing to consider all of the claimant's impairments in combination.

The ALJ stated that in determining Plaintiff's RFC he considered "all of the claimant's impairments, including impairments that are not severe." (Tr. 25). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments. (Tr. 27). Such language demonstrates the ALJ considered the combined effect of Plaintiff's impairments. Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

### F. Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record revealed that Plaintiff was able to do household chores slowly with breaks, to drive short distances, to take care of her personal needs slowly, to prepare simple meals and to handle finances. As pointed out by the ALJ, Plaintiff was also able to successfully complete her LLM in taxation, through online courses, during the relevant time period in question.

With respect to Plaintiff's alleged impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See

Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain).

Plaintiff argues that the ALJ did not allow her attorney to call witnesses during the July 29, 2015, administrative hearing. However, a review of the hearing transcript failed to show that the ALJ refused to allow Plaintiff's counsel to call witnesses. The Court would further point out that the October 8, 2015, letter to the Appeals Council requesting review of the ALJ's decision failed to argue that the ALJ refused to allow witness testimony. (Tr. 17).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### G. The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart,

353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

In finding Plaintiff able to perform a full range of light work, the ALJ considered Plaintiff's subjective complaints, the medical records, and the evaluations of the examining and non-examining medical examiners. Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined during the relevant time period. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### G. Past Relevant Work:

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment that precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). To be relevant, past work must have been done within the last 15 years, lasted long enough for the person to learn to do it, and constituted "substantial gainful activity." See 20 C.F.R. § 404.1565(a). Only after the claimant establishes that a disability precludes the performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*

> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); <u>Martin v. Sullivan</u>, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

In this case, the ALJ relied upon the testimony of a vocational expert who discussed the mental and physical requirements of Plaintiff's past relevant work. <u>See</u> <u>Gilbert v. Apfel</u>, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). After reviewing the record as a whole, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a title researcher and an attorney during the time period in question.

The Court further points out that the vocational expert testified that the hypothetical individual with the above referenced RFC would also be able to perform other work as a surveillance systems monitor and a type copy examiner. (Tr. 84-85).

**V. Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of November 2017.

                                              /s/ *Erin L. Wiedemann*
                                              HON. ERIN L. WIEDEMANN
                                              UNITED STATES MAGISTRATE JUDGE